# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUDHIR KATTA, | ) |
| Plaintiff, | ) |
| vs. | ) No. 2:11-cv-729 |
| GEICO INSURANCE COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CONTI, District Judge

Presently before the court is the Partial Motion for Summary Judgment, (ECF No. 16), brief in support, (ECF No. 17), and concise statement of material facts with accompanying exhibits (ECF No. 19.) filed by defendant Geico Insurance Company ("defendant"). Plaintiff Sudhir Katta ("plaintiff") filed a Brief in Opposition (ECF No. 23), and defendant filed its Reply (ECF No. 26). The parties filed a Combined Concise Statement of Material Facts ("CCS") (ECF No. 24.) This case arises out of a motor vehicle accident in which an uninsured driver struck plaintiff's car. Plaintiff filed a claim for uninsured motorist coverage pursuant to his insurance contract with defendant. Following an inability to agree upon a valuation for the claim, as set forth in the facts below, plaintiff filed suit claiming several violations of Pennsylvania state law, including a claim for common law bad faith and a violation of the Pennsylvania bad faith statute, 42 PA. CONS. STAT. ANN. § 8371.

Defendant raises two arguments in support of its motion for summary judgment: first, that Pennsylvania does not recognize a common law claim for bad faith; and second, that the agreed-upon facts do not support a claim of bad faith pursuant to the Pennsylvania bad faith

statute. The matter being fully briefed, it is now ripe for disposition. As set forth in the following memorandum, defendant's motion will be granted in part and denied in part.

I. **Factual Background**

   a. **The Parties**

Plaintiff is an adult individual who resides in Pittsburgh, Pennsylvania. (CCS ¶ 1.) Defendant Geico is an insurance company that provides insurance to consumers. (Id. ¶ 2.) At all times relevant to the present case, plaintiff was insured by a policy issued by defendant. (Id. ¶ 3); (ECF No. 19-2). The policy provided plaintiff with, inter alia, $100,000 in uninsured motorist coverage in the event of a motor vehicle accident. (CCS ¶ 7.)

   b. **The Accident and Injuries**

Plaintiff was involved in a motor vehicle accident on March 14, 2010. (CCS ¶ 4.) In his complaint, plaintiff alleges that his car was rear-ended while stopped at a red light by another driver traveling between approximately forty-five and fifty miles per hour. (ECF No. 1-3 ¶ 5.) The driver that struck plaintiff's car fled the scene of the accident and was later apprehended and identified as Mr. Jonathan Perrin. (CCS ¶ 4.) Mr. Perrin was found to be driving under the influence at the time of the accident, and he qualified as an uninsured motorist. (Id. ¶¶ 4-5.)

As a result of the accident, plaintiff alleges that he sustained injuries and sought medical treatment. (CCS ¶ 5.) Specifically, plaintiff alleges the following injuries: neck pain; shoulder pain; hip pain; lower and mid-back pain; severe headaches; tingling and numbness in his left arm and hand; a pinched nerve in his neck; and a herniated disk at the C 5-6 level. (ECF No. 1-3 ¶ 7.) Plaintiff alleges that he suffered damages as a result of the accident; specifically, he: endured pain and suffering, mental anguish and embarrassment; underwent medical treatment including

2

but not limited to chiropractic treatment; ingested numerous prescription drugs; underwent numerous physical therapy treatments; has been unable to engage in normal everyday activities that he enjoyed prior to the accident; incurred substantial bills for medical treatment; was required to receive treatment with numerous doctors at various medical facilities; and was required to undergo surgical evaluation. (Id. ¶ 8.) As a result of his alleged injuries, plaintiff sought opinions from Doctors William F. Donaldson and Allen Chu, both of whom noted that plaintiff was a candidate for surgery. (CCS ¶ 44.)[1] Plaintiff has not, to the court's knowledge, scheduled or undergone surgery subsequent to the accident. Plaintiff testified that he missed approximately twelve weeks of work from his job at Caterpillar, Inc. due to his injuries. (Id. ¶ 43.)[2] On January 27, 2012 (subsequent to the filing of this case), defendant requested that plaintiff undergo an independent medical evaluation ("IME") from J. William Bookwalter, III, a board-certified neurosurgeon, who reported that plaintiff's injuries have resolved, and that he is not a candidate for surgery. (Id. ¶ 42); (ECF No. 19-9).

    c. **Evaluating Plaintiff's Claim**

In September 2010, plaintiff filed an uninsured motorist claim with defendant. (CCS ¶ 8.) At that time, the claim was assigned to Amanda Browning, ("Ms. Browning"), a "Telephone

---

[1] The last four paragraphs of the CCS (ECF No. 24) are incorrectly numbered 41, 42, 41, and 42, respectively. For ease of understanding, the court will refer to those paragraphs as numbers 41, 42, 43, and 44, respectively.

[2] Plaintiff's response to defendant's motion for summary judgment (ECF No. 23) indicates that plaintiff sustained lost wages of approximately $17,770 during the period of twelve weeks of missed work. The citation to plaintiff's deposition reads "Deposition of Katta at XXX." (Id. at 5 n.1.) The court has not been provided with this deposition, and it does not appear that plaintiff actually cites to a particular page number. Neither plaintiff's complaint nor concise statement of facts references this alleged wage loss. The court must, however, view all facts presented in a light most favorable to plaintiff, and the court will accept the lost wage calculation as true for purposes of this motion. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Claim Representative II" for defendant. (Id.) Ms. Browning testified that she contacted plaintiff's counsel to request documentation confirming that Mr. Perrin was uninsured, and to request plaintiff's medical records. (Id. ¶¶ 9-10.) Her goal was to assemble a complete file containing all the information necessary to evaluate plaintiff's claim. (Id. ¶ 12.) Ms. Browning testified that she received the requested records from plaintiff's counsel. (Browning Dep. (ECF No. 19-3) at 30.) On October 1, 2010, Ms. Browning confirmed that Mr. Perrin was uninsured and she contacted plaintiff's counsel that same day. (CCS ¶ 13.)

On March 21, 2011, Ms. Browning received a demand package from plaintiff's counsel, which she reviewed. (Id. ¶ 14.) Based upon that review, Ms. Browning determined that plaintiff's claim "no longer involved merely soft tissue injuries," and may have been "more serious than initially determined." (Id. ¶¶ 16-17.) Ms. Browning determined that the injuries required the file to be transferred to a different claims adjuster. (Id. ¶¶ 14-17.) Ms. Browning's supervisor Nancy Truglio approved the transfer to Penny Hudson ("Ms. Hudson"), a continuing unit examiner for defendant. (Id. ¶¶ 15, 17); (Hudson Dep. (ECF No. 19-5) at 8.) Ms. Hudson reviewed the file and demand package and consulted with her supervisor, Deborah Ivy ("Ms. Ivy"). (CCS ¶¶ 18, 20-21.)

Ms. Hudson testified that she considers several factors when evaluating a case: (1) the type of accident; (2) the impact and amount of damages; (3) the medical records; (4) the injury or injuries; and (5) the treatment necessary to resolve the injury or injuries. (Id. ¶ 22.) Based upon her evaluation of plaintiff's case, Ms. Hudson testified that she knew plaintiff had visited a chiropractor or physical therapist on twenty or twenty-five occasions, had office visits with physicians, and had been subject to some diagnostic tests. (Id. ¶ 31.) Ms. Hudson was also aware

4

that surgery had been recommended by at least one of plaintiff's doctors. (Id. ¶ 32.) Ms. Hudson testified that plaintiff had been involved in a "couple" of accidents after the events giving rise to the present case. (Id. ¶ 29.) Ms. Hudson was not aware that plaintiff had missed time at work at the time she reviewed the file; she only became aware of this after suit was filed and plaintiff was deposed. (Hudson Dep. (ECF No. 19-6) at 105-07.)

Ms. Ivy is a claims manager for defendant, and her job is to manage and participate in claims reviews with associates (such as Ms. Hudson) who process bodily injury claims and lawsuits. (Id. ¶¶ 33, 35.) When a demand is made in excess of an examiner's authority, Ms. Ivy will review that examiner's evaluation. (Id. ¶ 36.) In evaluating a claim, Ms. Ivy considers several factors: (1) the type of injury; (2) the length of treatment; (3) the type of accident; (4) the age of the claimant; (5) the type of treatment recommended; and (6) the claimant's medical history. (Id. ¶ 37.) Defendant uses a computer program known as Claim IQ as a tool for evaluating cases, (Id. ¶ 38), but Ms. Ivy is not required to review the program's results before discussing settlement authority or value of a claim with the examiners who work for her. (Id. ¶ 39.) Ms. Ivy reviewed plaintiff's claim file with Ms. Hudson. (Id. ¶ 40.)

### d. Offer of Settlement

As part of her duties, Ms. Hudson is able to make compromise offers of settlement in consultation with her supervisor Ms. Ivy. (Id. ¶ 23-24.) After reviewing plaintiff's case with Ms. Ivy, Ms. Hudson made plaintiff an offer of settlement of $7,000 on March 28, 2011. (Id. ¶¶ 25, 40.) Shortly thereafter, on May 9, 2011, defendant was notified about the present lawsuit. (Id. ¶ 26.) Ms. Hudson continues to be assigned to the claim, but the lawsuit papers and the file have been referred to defendant's staff counsel, Karen Hughes. (Id. ¶¶ 27-28.) After suit was filed,

Ms. Ivy entered a note in the claim log for plaintiff's case, stating: "[s]uit prompted by value dispute after what appears to be a first offer." (Id. ¶ 41.)

## II. Procedural History

Plaintiff filed the instant lawsuit in the Court of Common Pleas of Allegheny County, Pennsylvania on or about May 10, 2011. (ECF No. 1.) The case was removed to this court on June 2, 2011 pursuant to this court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Plaintiff's complaint alleges three violations of Pennsylvania state law: a claim for full tort recovery pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 PA. CONS. STAT. §§ 1701-99.7 (Count I); a common law claim for breach of the duty of good faith and fair dealing (Count II); and a breach of the statutory requirement of good faith and fair dealing as set forth in 42 PA. CONS. STAT. § 8371 (Count III). (ECF No. 1-3.) On October 25, 2011, defendant filed its answer and defenses. (ECF No. 5.) The parties concluded discovery on February 29, 2012, and defendant now seeks partial summary judgment with respect to Counts II and III of the complaint.

## III. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> . . .

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing Anderson, 477 U.S. at 248; Celotex Corp., 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

7

> taken as a whole could not lead a rational trier of fact to find for
> the nonmoving party, there is no 'genuine issue for trial.'"

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); see Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

When the nonmoving party bears the burden of proof at trial, the moving party may discharge its burden by pointing out "that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the moving party has made this showing, the burden then shifts to the nonmoving party, who cannot simply rest on the allegations in the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. Summary judgment is proper in cases where the nonmoving party's evidence in opposition is "merely colorable" or "not significantly probative." Anderson, 477 U.S. at 249-50.

### IV. Discussion

In support of its motion, defendant argues that Pennsylvania does not recognize a common law cause of action for bad faith, and that plaintiff did not satisfy his evidentiary burden of proving bad faith by clear and convincing evidence. Because Pennsylvania does recognize a

common law claim of bad faith, defendant's motion with respect to Count II will be denied. With respect to Count III, a review of the record reveals that no genuine issue of material fact exists, and no reasonable jury could find evidence of bad faith; therefore, defendant's motion with respect to Count III will be granted.

      a.    **Common Law Bad Faith (Count II)**

The Pennsylvania Supreme Court acknowledged in <u>Birth Center v. St. Paul Companies, Inc.</u>, 787 A.2d 376 (Pa. 2001) that section 8371 "does not prohibit the award of [common law] compensatory damages; it merely provides a basis to award additional damages. The statute does not reference the common law, does not explicitly reject it, and the application of the statute is not inconsistent with the common law. Accordingly, the remedy survives." <u>Birth Center</u>, 787 A.2d at 389. The court in <u>Birth Center</u> explicitly stated that section 8371 does not alter a plaintiff's common law contract rights. <u>Id.</u> at 386; <u>accord</u> <u>Ash v. Cont'l Ins. Co.</u>, 932 A.2d 877, 884 (Pa. 2007) (acknowledging the distinction between the common law contract claim of bad faith and the tort remedy created by statute in section 8371). Federal courts facing this question have adopted the same reasoning. <u>Haugh v. Allstate Ins. Co.</u>, 322 F.3d 227, 236-37 (3d Cir. 2003) (acknowledging the common law contract right of recovery for a breach of the duty to act in good faith when making settlement decisions); <u>accord</u> <u>DeWalt v. Ohio Cas. Ins. Co.</u>, 513 F. Supp. 2d 287, 294-95 (E.D. Pa. 2007) (acknowledging both a statutory and common law claim of bad faith).

Defendant cites several decisions from federal and state courts for the proposition that Pennsylvania does not recognize a common law claim of bad faith. (ECF No. 17 at 2-3) (citing <u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, 126 F.3d 524 (3d Cir. 1997); <u>Hardinger v. Motorists</u>

9

Mut. Ins. Co., No. 03-cv-115, 2003 WL 21250664 (E.D. Pa. Feb. 27, 2003); Johnson v. Beane, 664 A.2d 96 (Pa. 1995); and D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co., 431 A.2d 966 (Pa. 1981)). None of these decisions provide a basis for precluding plaintiff's common law claim.

As an initial matter, D'Ambrosio, Polselli, and Johnson all predate the Birth Center decision by several years, and therefore do not reflect the Pennsylvania Supreme Court's most recent statement on the issue. The Pennsylvania Supreme Court in Birth Center explicitly noted that the holding in D'Ambrosio was extremely limited, and allowed for the possibility of a common law contract right of recovery for bad faith in certain circumstances. Birth Center, 787 A.2d 385-86. Likewise, neither Polselli nor Johnson bar plaintiff's claim because both acknowledged that a plaintiff could potentially assert a common law contract cause of action for bad faith. See Polselli, 126 F.3d at 530 (acknowledging that "it is reasonably clear that a section 8371 claim **may not** be the sole claim of an insured") (emphasis added); Johnson, 664 A.2d at 99 n.3 (acknowledging that an independent bad faith cause of action could arise if provisions in the contract allow it). Finally, the Hardinger court acknowledged the Birth Center holding, but found that the plaintiff did not allege that the defendant engaged in bad faith during settlement negotiations. Hardinger, 2003 WL 21250664 at *1-*2.

The Pennsylvania Supreme Court and federal courts interpreting Pennsylvania law have thus allowed plaintiffs to assert a common law contract claim of bad faith in addition to a bad faith claim pursuant to section 8371. Courts that have questioned this practice have done so outside the context of bad faith in settlement discussions, and have acknowledged the possibility that such a claim may be brought in the right circumstances. Plaintiff has, therefore, properly

10

asserted a common law contract claim for bad faith, and defendant's motion for summary judgment with respect to Count II must be denied.[3]

### b. Bad Faith Pursuant to § 8371 (Count III)

#### i. Bad Faith Standard

Pennsylvania's insurance bad faith statute, 42 PA. CONS. STAT. § 8371, provides:

> [i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer.

To satisfy the requirement of bad faith articulated in section 8371, the insured must demonstrate that the insurer (1) "lacked a reasonable basis for denying benefits;" and (2) "knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. and Cas. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Claims of bad faith are "fact specific and depend on the conduct of the insurer *vis a vis* the insured." Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006). A policyholder must establish both elements of the Terletsky test by a heightened showing of clear and convincing evidence. Smith v. State Farm Mut. Auto. Ins. Co., No. 11-7589, 2012 WL 508445, at *3 (E.D. Pa. Feb. 16, 2012). The clear and convincing evidence

---

[3] The standard governing common law contract claims for bad faith is a negligence standard, whereas claims brought pursuant to section 8371 are subject to the heightened standard of bad faith as set forth in Terletsky. DeWalt, 513 F. Supp. 2d at 295-97. Because defendant did not argue that it satisfied this lower negligence standard, the court will not address the merits of Count II. See Heinlein v. Progressive N. Ins. Co., No. 05-1769, 2007 WL 2071676, at *1 n.1 (W.D. Pa. Jul. 17, 2007) (noting that "defendant carries the initial burden to demonstrate entitlement to judgment on a claim against it" and the court will not rule sua sponte on a question not before it).

standard requires the insured to "provide evidence 'so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) (quoting Bostick v. ITT Hartford Grp., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)). In the context of a motion for summary judgment, the heightened evidentiary standard applies because it reflects the insured's substantive burden at trial. Id. (citing Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005)).

Section 8371 does not explicitly define bad faith; however, the Court of Appeals for the Third Circuit has found that for purposes of section 8371, "bad faith" is

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000) (citing Terletsky, 649 A.2d at 688).[4] Examples of bad faith include a frivolous or unfounded refusal to pay, failure to investigate the facts, failure to communicate with the insured, Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 140 (E.D. Pa. 2007), failure to engage in settlement negotiations, Frazier v. State Farm Auto. Ins. Co., 33 Pa. D. & C.4th 170, 176 (Pa. C.P. Phila. 1996), and unreasonable delay, Heinlein v. Progressive N. Ins. Co., No. 05-1769, 2007 WL 2071676, at *4 (W.D. Pa. July

---

[4] Plaintiff emphasizes that the definition of bad faith as set forth in Keefe is merely dictum, and is not a de facto third prong of the Terletsky test. (ECF No. 22 at 9) (citing McPeek v. Travelers Cas. and Surety Co., No. 06-cv-114, 2007 WL 1875801, at *2 (W.D. Pa. June 27, 2007) (acknowledging that a plaintiff claiming bad faith need not prove an "improper motive or ill will on the part of the insurer")). It stands to reason that a showing of ill will is not necessary, since the language in Terletsky allows the court to infer the necessary bad faith merely on a showing of self-interest. Terletsky, 649 A.2d at 688.

17, 2007) (citing Sanders v. State Farm, 47 Pa. D. & C.4th 129 (Pa. C.P. Del. 2000)). An insurance company, however, need not "submerge its own interests in favor of those of its insured, and investigating and litigating a claim does not constitute bad faith." Heinlein, 2007 WL 2071676, at *4.

### ii. Whether Defendant Acted in Bad Faith

The crux of plaintiff's bad faith claim is that defendant unreasonably undervalued his injuries and consequently made a single, unreasonably low settlement offer despite allegations that the claim was worth much more. The only specific evidence plaintiff identifies is the allegation that plaintiff suffered lost wages of approximately $17,770, which is approximately 2 ½ times defendant's $7,000 offer of settlement.[5] Deposition evidence, however, indicates that defendant was not aware of plaintiff's lost wages at the time the offer was made. In light of the facts available to defendant at the time the offer was made, plaintiff identifies no relevant legal authority supporting his argument that a disagreement over the valuation of a claim is sufficient to constitute bad faith as a matter of law.

### A. The Value of Plaintiff's Claim Remains Uncertain

Defendant argues that plaintiff has not set forth clear and convincing evidence of unreasonableness necessary to survive summary judgment on his bad faith claim. In support of its motion, defendant principally relies on the decision in Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583 (E.D. Pa. 1999), which defendant argues stands for the proposition that an insurer's refusal to settle an uninsured motorist case is not bad faith where the claim's value remains

---

[5] As indicated above in note 2, this claim is largely unsupported in the record before the court and is based solely on an assertion made in plaintiff's moving papers.

unclear. Id. at 592. Defendant argues, therefore, that it was under no duty to settle the claim for plaintiff's demand of the policy limits.

The plaintiff in Kosierowski (an injured motorist insured by the defendant Allstate) demanded $100,000—the limits of her uninsured motorist coverage. Kosierowski, 51 F. Supp. 2d at 586. A lengthy process of selecting an arbitration panel ensued, concurrent with a claim investigation by defendant Allstate. Id. at 586-87. During that investigation, Allstate calculated the value of the plaintiff's claim on two different occasions using its claim valuation software. The first valuation resulted in a settlement range between $11,624 and $13,824. Id. at 587. The second valuation, which included additional variables, resulted in a settlement range between $50,760 and $61,060. Id. Allstate made an offer of $50,000 to settle the claim. Id. Following further negotiations, Allstate increased its offer to $80,000, and the plaintiff later agreed to settle the case for $100,000—the full amount available under plaintiff's policy. Id. The plaintiff brought suit pursuant to section 8371 arguing, inter alia, that Allstate acted in bad faith by making an unreasonably low offer. Id. at 588.

The district court in Kosierowski acknowledged that "a refusal to settle when liability and injuries are clear may constitute bad faith in some circumstances." Id. at 590 (citing Klinger, 115 F.3d at 235). The court determined, however, that although Allstate knew the plaintiff had been injured in the accident, "the value of that injury for purposes of claim payment was far from clear." Id. Consequently, the court determined that offering the bottom of an estimated settlement range does not constitute bad faith, and an insurance company may properly seek to negotiate a settlement agreement where the value of injuries is "uncertain." Id. at 592.

14

Plaintiff appears to concede that the valuation of his claim remains in dispute, (ECF No. 23 at 5-7),[6] but adduces no evidence beyond allegations of severe injury in the complaint that are unsupported by any medical records, reports, or other evidence sufficient to rebut defendant's motion. Celotex, 477 U.S. at 325. Defendant further emphasizes the uncertainty in this case by pointing out that plaintiff did not schedule surgery despite two doctor's opinions indicating that surgery was an option. (ECF No. 19-9 at 1-2.) Upon learning about plaintiff's subsequent accident, defendant's IME ultimately revealed that surgery was no longer necessary, further calling into question the value of plaintiff's claim. (Id. at 6.) Defendant points out that plaintiff was involved in at least one car accident subsequent to the accident that is the subject of this case, which could have impacted the nature and extent of plaintiff's injuries. (ECF No. 17 at 9.) Given the lack of evidence supporting plaintiff's claims about the seriousness of his injuries and the extent to which those injuries may or may not have required costly medical treatment, it was not unreasonable or bad faith for defendant to refuse to settle at plaintiff's demand of the policy limits. Kosierowski, 51 F. Supp. 2d at 590-92.

### B. Unreasonably Low Offer

Plaintiff likewise did not adduce clear and convincing evidence that defendant's initial offer of $7,000 was unreasonably low or made in bad faith. Plaintiff maintains that the offer was the result of defendant's failure to follow its own claims valuation procedure, but cites no specific evidence in the record beyond his allegations that the claim was worth much more. (ECF No. 23 at 4-5.) Plaintiff argues that "[h]ere, having clearly laid out its process for valuing claims,

---

[6] Plaintiff specifically identifies several points of disagreement: (1) the speed at which the car that struck plaintiff was travelling; (2) the extent of injuries suffered by plaintiff; (3) the medical opinions indicating that plaintiff is a surgical candidate; and (4) whether the opinion based on the IME can be the basis of a prior value determination. (ECF No. 23 at 6-7.)

Defendant failed even to meet their own measure of reasonable conduct. The accident in which Katta was injured involved severe property damage, debilitating physical injuries, lost wages from a well-paid engineering position and a youthful, active victim." (Id.) Plaintiff then cites deposition testimony in which defendant's claims evaluators acknowledged the damage to plaintiff's vehicle, the fact that surgery had been recommended for plaintiff's back, plaintiff's occupation, and plaintiff's age. (ECF No. 23 at 4-5); (Hudson Dep. (ECF No. 19-6) at 56, 75, 106). Plaintiff presents no evidence indicating that defendant failed to follow any of its procedures.

Importantly, Penny Hudson testified that she relied on the cited information when evaluating plaintiff's claim and when making the offer of $7,000, (Hudson Dep. (ECF No. 19-6) at 80), and plaintiff failed to provide evidence and made no argument to refute that fact. Three different examiners reviewed plaintiff's file, consulted with each other, and decided on an offer of settlement. Nothing about this process indicates that defendant's examiners failed to consider any available evidence. Plaintiff did not adduce any evidence indicating that defendant was aware of plaintiff's alleged lost wages at the time the initial offer was made. Penny Hudson (the claims representative who made the offer) stated that she only became aware of plaintiff's missed time at work after his deposition, and that she was not aware of any documentation in the claim file that would indicate otherwise. (Hudson Dep. (ECF No. 19-6) at 105.)

Even if it is assumed that defendant's offer was low in light of plaintiff's lost wages claim (although defendant was not aware of the claim at the time the offer was made), such an offer was not enough to constitute bad faith. In Smith v. State Farm Mutual Automobile Insurance Co., the United States District Court for the Eastern District of Pennsylvania refused to
16

allow the plaintiff's bad faith claim to go forward despite defendant's "'intentional strategy of making low-ball offers designed to enhance [the insurer's] own financial position at the expense of their insured.'" Smith, 2012 WL 508445, at *3. In Smith, the plaintiff made a demand for the $45,000 limit of her underinsured motorist benefits coverage while alleging $26,474 in unpaid bills. Id. at *1. The defendant insurance company responded with an offer of settlement of $21,000. Id. The court granted the defendant's motion to dismiss, implicitly finding that an initial offer below the alleged amount of loss is not necessarily evidence of bad faith. Id.; see Thomer v. Allstate Ins. Co., 790 F. Supp. 2d 360, 373-74 (E.D. Pa. 2011) (insurer acted reasonably in rejecting a wage loss report in light of conflicting medical reports). Finally, plaintiff offers nothing to rebut the record evidence indicating that the $7,000 offer was merely an initial offer and thus a "starting point for negotiations." Hollingsworth v. State Farm Fire & Cas. Co., No. 04-3733, 2005 WL 563414, at *8 (E.D. Pa. Mar. 9, 2005) (granting summary judgment in favor of insurer when a low initial offer was clearly a starting point for negotiations).

### C. Negotiation Between the Parties

Plaintiff argues that defendant had an opportunity to negotiate at the mediation that took place on October 10, 2011 and failed to do so. (ECF No. 23 at 9-11.) As has already been shown, defendant had no absolute duty to negotiate because the value of the claim was in dispute, and because plaintiff's policy does not mandate arbitration. (ECF No. 19-2 at 14.) Nevertheless, defendant attempted to commence negotiations with the $7,000 offer, as reflected in defendant's claim log. In response, plaintiff was unwilling to move from his demand of the full $100,000 limit under his policy, "prompt[ing] a stalemate" in the negotiation process. See Johnson v. Progressive Ins. Co., 987 A.2d 781, 785 (Pa. Super. Ct. 2009) (affirming grant of summary

judgment on a bad faith claim in part because plaintiff refused to move from a demand of the policy limits). Defendant argues that its representative had additional authority at the mediation, but it appeared as though plaintiff was unwilling to move from his demand, so the mediation was adjourned. (ECF No. 26 at 4.) Defendant maintains that it never represented that the $7,000 offer was final—a contention supported by the record in this case. (Id.) Plaintiff insists that defendant must produce evidence of "their willingness to negotiate, or that Katta was aware of the fluidity of their position," (ECF No. 23 at 11), but plaintiff supports his claim with no legal authority, and this statement contradicts plaintiff's evidentiary burden of showing bad faith by clear and convincing evidence.

Finally, there is no evidence that plaintiff attempted to bolster his negotiating position by offering additional evidence in support of his claim. See Smith, 2012 WL 508445, at *1-2 (during robust settlement negotiations, the plaintiff continually demanded the policy limits, but also offered further evidence in support of her demand after rejecting each counteroffer). Plaintiff in the present case offers no evidence that he ever rejected defendant's offer, and did not communicate additional information to defendant about his claim between the time that defendant made its offer and plaintiff filed suit. See (Hudson Dep. (ECF No. 19-6) at 68) (Penny Hudson indicated that she had no discussions about the case between the time she made the offer of $7,000 and the time plaintiff filed suit). Plaintiff's unwillingness to negotiate in the face of an initial offer is not a basis for bad faith.

It is troubling that plaintiff seeks to proceed with his bad faith claim despite having made no effort to engage in negotiations with defendant. Plaintiff was under no duty to negotiate, but courts have recognized that stonewalling negotiations is a relevant consideration in determining

18

whether an insurer acted in bad faith. Johnson, 987 A.2d at 785. If plaintiff's bad faith claim were to proceed, future plaintiffs could survive summary judgment on bad faith claims by simply filing suit after receiving an offer that the plaintiff believes is too low. The mere fact that defendant's initial offer was lower than plaintiff's unsubstantiated claim of lost wages, in absence of any other substantive evidence of bad faith, including unreasonable delay, intentional deception, or the like, is not sufficient to constitute clear and convincing evidence. Smith, 2012 WL 508445, at *7-8 (even "low-ball offers" may not be sufficient to support a claim of bad faith; particularly where the plaintiff's other allegations of bad faith are "conclusory and not supported by any factual averments").

### D. Reliance on IME

Plaintiff finally argues that defendant could not have relied on the IME in making its offer of settlement because the offer was extended prior to the IME. Although it is true that the IME could not have formed the basis for defendant's initial offer, defendant was fully justified in conducting a thorough investigation of plaintiff's claim, Heinlein, 2007 WL 2071676, at *3, particularly after it was revealed that plaintiff had been involved in a subsequent accident. Zappile v. AMEX Assurance Co., 928 A.2d 251, 260-61 (Pa. Super. Ct. 2007) (an insurer is entitled to investigate evidence of a second accident by requesting an IME). The IME also provided a reasonable basis for why defendant continued to assert its initial offer, since it further called into question the extent of plaintiff's injuries and the treatment necessary for those injuries. As indicated above, an insurer does not act in bad faith by refusing to settle a claim where the value remains in dispute. Kosierowski, 51 F. Supp. 2d at 591-92.

### V. Conclusion

19

Viewing the record as a whole, defendant presented evidence that it acted reasonably with respect to its handling of plaintiff's claim. In response, plaintiff did not meet his burden to adduce clear and convincing evidence of bad faith. Due to the uncertainties surrounding plaintiff's injuries and treatment, defendant was under no affirmative duty to negotiate a settlement. Nevertheless, defendant did make an offer based upon its review of the case. Plaintiff disputes whether this offer was reasonable, but presented no evidence indicating that defendant failed to consider all the information available to it at the time it was made. Even once defendant became aware of plaintiff's alleged lost wages (after suit was filed), there remained conflicting evidence about the extent of plaintiff's injuries in light of the IME and plaintiff's subsequent accidents. Plaintiff ultimately sought a higher settlement award than he was offered, and rather than attempting to negotiate or bolster the evidence in support of his position, plaintiff filed suit shortly after receiving defendant's initial offer. Such facts are not evidence of bad faith on defendant's part, but reflect a disagreement over the value of plaintiff's claim. As such, defendant's motion with respect to Count III shall be GRANTED. An appropriate order will be entered.

Dated: January 24, 2013

By the Court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge